IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ANGELA BRYSON MILLER**                                                                    **MOVANT**

**V.**                                                                          **NO. 3:10CR163-SA**

**UNITED STATES OF AMERICA**                                                          **RESPONDENT**

## MEMORANDUM OPINION AND ORDER

Angela Bryson Miller comes before the Court on a successive motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, which has been amended to include a claim that her crimes of conviction no longer qualify as violent felonies. The Government has responded to Miller's arguments, and the Court has held an evidentiary hearing. Having considered the pleadings and the record, including the evidence adduced at the evidentiary hearing, along with the relevant law, the Court finds that the motion should be denied, for the reasons that follow.

**Background Facts and Procedural History**

Following a jury trial, Angela Miller was convicted of two counts of aiding and abetting the use of firearms in furtherance of armed bank robberies in violation of 18 U.S.C. § 2 and 18 U.S.C. § 924(c)(1)(A). She was sentenced by judgment entered on July 18, 2012, to serve 384 months in the custody of the Federal Bureau of Prisons ("BOP"). Miller appealed with the assistance of appellate counsel Christi R. McCoy, and the judgment was affirmed in February 2014. *See* doc. #191; *see also United States v. Miller*, 554 F. App'x 311 (5th Cir. Feb. 12, 2014). Thereafter, in November 2014, Miller filed a motion with the United States Court of Appeals for the Fifth Circuit seeking to have the mandate recalled, arguing that her appellate counsel failed to follow Miller's request that a petition for certiorari be filed. *See* doc. #214, pp. 2, 14-15. The Fifth

Circuit noted that Miller failed to present evidence demonstrating that she timely made a written request for McCoy to file a certiorari petition in the United States Supreme Court, despite the fact that McCoy offered to produce copies of her correspondence with Miller if Miller would file a release. *Id*. Noting that Miller filed no such release and did not produce evidence supporting her claim, her motion to recall the mandate was denied without prejudice to her ability to pursue an ineffective assistance of counsel claim in a § 2255 motion. *Id*.

On or about August 17, 2015, Miller filed the instant motion raising an ineffective assistance of counsel claim against McCoy for her alleged failure to follow Miller′s instructions to file a certiorari petition. After receiving the Government′s response, the Court scheduled an evidentiary hearing on Miller′s ineffective assistance of counsel claim and ordered that counsel be appointed to her. On June 24, 2016, Miller, through counsel, moved to amend her motion to include a claim that her crimes of conviction no longer qualify as violent felonies pursuant to the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2251 (2015), arguing that the underlying offenses of armed bank robbery are only "crimes of violence" under the statute's now unconstitutional residual clause. The Court granted the motion to amend, and the parties briefed the issue of *Johnson*′s application to the instant case. On August 31, 2016, the Court heard the parties' evidence as to Miller′s ineffective assistance of counsel claim, and it granted Miller's current attorney additional time to file a reply brief as to the *Johnson*-based challenge. Miller's counsel submitted a reply brief on September 16, 2016.

**Legal Standard**

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A motion brought pursuant to § 2255 is a "means of collateral attack on a federal sentence." *Cox v.*

*Warden, Federal Detention Ctr.*, 911 F.2d 1111, 1113 (5th Cir. 1990) (citation omitted). There are four separate grounds upon which a federal prisoner may move to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Collateral attack limits a movant's allegations to those of "constitutional or jurisdictional magnitude." *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (citation omitted). Relief under § 2255 is reserved, therefore, for violations of "constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).

To make a substantial showing of the denial of her Sixth Amendment right to the reasonably effective assistance of counsel, a movant must satisfy the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires her to demonstrate "that counsel's performance was deficient," and that "the deficient performance prejudiced [her] defense." *Strickland*, 466 U.S. at 687. To establish deficient performance, the movant "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. The court's scrutiny of counsel's performance must be "highly deferential." *Id*. at 689. To prove prejudice, the movant must demonstrate that the result of the proceedings would have been different if counsel had performed effectively. *Id*. at 694. The prejudice inquiry does not merely require that the movant raise the "possibility of a different outcome," but rather, it requires the movant to "demonstrate that the prejudice rendered sentencing 'fundamentally unfair or

3

unreliable.'" *Crane v. Johnson*, 178 F.3d 309, 312-13 (5th Cir. 1999) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

**The Evidence**

Following her sentencing hearing, Miller filed a *pro se* notice of appeal. *See* doc. # 153. Thereafter, attorney Christi McCoy was appointed as appellate counsel for Miller, and the two began communicating through letters. Once Miller was transferred to BOP custody, the two began communicating through the BOP's official email system, CorrLinks. Miller testified that she was housed at a Federal Correctional Institution in Aliceville ("FCI Aliceville"), Alabama, on February 14, 2014, when, through a telephone conversation with her daughter, she learned that her appeal had been denied by the Fifth Circuit. Miller testified that she immediately emailed McCoy about the decision and received a response from McCoy stating that Miller would receive paperwork shortly.

The parties agree that following the rejection of Miller's appeal on February 12, 2014, McCoy sent Miller a letter in which McCoy instructed Miller: "You have ninety (90) days to consider filing a *Writ of Certiorari* to the United States Supreme Court. I do not believe such a *writ* would be successful and I will not be filing one on your behalf."[1] *See* Def't Ex. 3; Gov't Ex. 1; and doc. #215 at 6. Miller stated that she subsequently received paperwork from both McCoy and the Fifth Circuit, and that she sent McCoy an email asking her to continue the appeals process. Miller testified that she was unfamiliar with the legal term "certiorari" at that time but asked McCoy in the email to proceed to "the next step" of the appeal. McCoy denies that Miller ever made such a request. A certiorari petition was not filed.

---

[1] The parties agree that the letter, dated October 4, 2013, is obviously misdated, as Miller's appeal was not finalized until February 2014.

4

According to Miller, she filed a motion in the Fifth Circuit to recall the mandate in her criminal case in November 2014. *See* doc. #214 at 2. As part of that process, she maintains, the appellate court sent both her and the warden paperwork compelling FCI Aliceville to assist Miller in obtaining her email communications with McCoy for February 2014, which were presumably stored on the CorrLinks system. Miller testified that she talked to the associate warden, Sekou Ma'at, about the paperwork, though Ma'at, submitted a declaration in this case maintaining that he could not recall having a conversation with Miller about her emails to McCoy. Gov't Ex. 4, § 2. According to Miller, the warden at FCI Aliceville, Arcola Washington-Adduci, denied receipt of any paperwork from the Fifth Circuit concerning this case. Ms. Washington-Adduci submitted a declaration in this cause stating she did not recall any discussion of emails between Miller and McCoy. Gov't Ex. 6, § 2. Miller contends that despite these declarations, she did in fact have conversations with both the warden and associate warden about her emails with McCoy and was unable to obtain any assistance in retrieving the emails stored on the system. In fact, she maintains, she also asked McCoy for a copy of all correspondence, including emails between the two, and while McCoy promised she would forward all of the correspondence to Miller, she did not.

Two letters from McCoy to Miller dated January 20, 2015, and August 26, 2015, respectively, were produced at the evidentiary hearing. Def't. Exs. 1 & 2. In each letter, McCoy denies the allegation that she failed to file a certiorari petition after Miller requested she do so. *Id*. In her August 26, 2015, letter, McCoy states that her computer has been damaged, and that she will attempt to have the hard drive restored and the emails presented to the Fifth Circuit. Def't Ex. 2. McCoy testified that she was later able to have her emails retrieved, but that there were no emails between Miller and McCoy concerning a certiorari petition.

In connection with the instant motion, Miller's current attorney executed a subpoena for

5

any emails sent by Miller to McCoy between October 2013 through August 2016. Jarred Booth, a special investigative services technician at FCI Aliceville, submitted a declaration in this cause stating that he searched the inmate database and the inmate email system and was not able to locate any relevant emails, as under BOP's email retention protocol, all emails are purged from the system six months from the date that they are sent or received. Gov't Ex. 5. Miller testified that she was given no advance notice that emails were purged after six months, and she argued that her persistent attempts to retrieve her communication with McCoy point to a conclusion that she did, in fact, send written correspondence asking for the certiorari petition to be filed.

McCoy, conversely, testified that at no time did Miller ask her to file a certiorari petition on her behalf and maintained that she did not discuss the issue with Miller after she sent the misdated letter advising Miller of the ninety-day window within which to file for certiorari. She testified that she did exchange correspondence and emails with Miller even after entry of the Fifth Circuit's mandate, noting that Miller inquired about assistance with a Rule 35 motion and stated she was working on a § 2255 motion at the time. McCoy stated that Miller at no time requested that a certiorari petition be filed on her behalf, and she maintained that she would have filed one if such a request had been made.

## This § 2255 Motion is Successive

At the outset, the Court notes that Miller is before the Court on a second-in-time § 2255 motion, having been granted permission from the Fifth Circuit to proceed on a claim of ineffective assistance of counsel. *See* doc. #219. The parties appear to agree that the motion is not successive. However, as the Court noted the following in its order transferring this matter to the Court of Appeals for Fifth Circuit for determination of whether the instant motion should be considered in this Court:

6

> The Court determines that Miller now presents a claim that could have been presented in her earlier motion, which was not resolved until after this instant claim became ripe. The Court notes that a petition for certiorari to the Supreme Court must be filed within ninety days following the entry of judgment. *See* Sup. Ct. R. 13.1. In this case, the time expired for Miller to seek certiorari review on or about May 13, 2014 (February 12, 2014 plus 90 days). Miller's initial § 2255 motion was pending before this Court on May 13, 2014, and Miller supplemented that motion on or about May 16, 2014. However, Miller did not attempt to supplement her initial § 2255 motion to include the claim now asserted, despite the fact that she was then aware of its existence. This Court resolved Miller's first § 2255 motion approximately 167 days after the Fifth Circuit affirmed the judgment on direct appeal, and the claim that counsel failed to file a petition for writ of certiorari as requested was a claim that could have been included in her earlier motion. Therefore, this action is successive.

*See* doc. #216 at 3. Because she could have sought to supplement her initial § 2255 motion to include the instant claim, the Court concludes it must be considered successive. *See, e.g.*, *Magwood v. Patterson*, 561 U.S. 320, 354 (2010) ("A second petition raising a claim that could have been raised in a prior petition . . . is still 'second or successive.'"); *In re Wood*, 2016 WL 2772275, at *4 (5th Cir. May 12, 2016) (denying permission to file successive habeas petition where movant could have sought to amend his initial habeas petition to include new claim).

The Fifth Circuit's grant of permission to file this successive petition does not entitle Miller to a merits review, necessarily, as the authorization to file a successive petition represents only a determination that Miller has made a prima facie showing that her motion satisfies the requirements for successive motions under § 2255. *Reyes-Requena v. United States*, 243 F.3d 893, 898-900 and n.16 (5th Cir. 2001). Rather, before reaching the merits of Miller's claim, this Court must "dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." 28 U.S.C. § 2244(b)(4).

For merits review, a successive motion must demonstrate: "(1) newly discovered

evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h); *Reyes-Requena*, 243 F.3d at 900. This case involves neither. Therefore, Miller has failed to make the required showing for her claim of ineffective assistance of counsel, and the claim should be dismissed.

**The Merits: Ineffective Assistance of Appellate Counsel**

Alternatively, the Court finds that a review of the merits of Miller's claim demonstrates that Miller has failed to establish her ineffective assistance claim by a preponderance of the evidence. *See, e.g., Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980). The Court notes that at the evidentiary hearing, Miller and McCoy both testified that McCoy sent Miller a letter advising her of her right to seek certiorari review in February 2014 and advising her that McCoy would not file a writ on her behalf. Miller argued that she informed McCoy to "go to the next step," stating that she was unfamiliar with the legal terminology "certiorari," but that she nonetheless made clear to McCoy her intention that McCoy continue the appeals process. First, the Court notes that Miller has been unable to produce any evidence that she made such a request, and it notes that the associate warden and warden have submitted declarations stating that they recall no discussion with Miller about the emails. Second, the February 2014 letter from McCoy clearly advised Miller what the "next step" was, and Miller was assuredly advised of her ability to seek certiorari review by the letter, which she admittedly received. Given the prolific

nature of Miller's *pro se* filings[2] and her awareness of the need to file her own petition for certiorari if she wanted to pursue that avenue of relief, it strains credulity to assume that Miller simply sat passively on her rights while the time for her to file a certiorari petition expired. Rather, in examining all of the evidence, the Court finds the most credible explanation for the absence of a certiorari petition to be that Miller did not make a request of McCoy to file a certiorari petition.

However, even if the Court were to assume that Miller did ask McCoy to "take the next step," Miller is not entitled to § 2255 relief. The Fifth Circuit's Plan for Representation on Appeal Under the Criminal Justice Act ("CJA Plan") provides:

> Promptly after the court of appeals' decision issues, appointed counsel must advise the client in writing of the right to seek further review by filing a petition for writ of certiorari with the United States Supreme Court. If the client asks in writing that counsel file a petition, counsel must do so in a timely manner. If counsel believes filing a petition would be futile, he or she may move the court of appeals to be relieved of the obligation. The court of appeals also may act sua sponte to relieve counsel of any further representation.

CJA Plan ' 6, ¶ 4. The Court is aware that the Fifth Circuit has, in some instances, granted § 2255 relief on claims that counsel failed to advise his or her client of the ability to seek certiorari review from the Supreme Court. *See, e.g., Ordonez v. United States*, 588 F.2d 448, 449 (5th Cir. 1979) (holding that deliberate failure of counsel to file a petition for certiorari after promise made by counsel to file a petition is sufficient for appellate court to withdraw mandate); *Lacaze v. United States*, 457 F.2d 1075, 1076-77 (5th Cir. 1972) (recalling mandate upon determination that counsel failed to initiate a certiorari petition or advise client of right to seek review); *United*

---

[2]Throughout the post-conviction period, Miller filed the following motions *pro se* in this cause: notice of appeal [153], a c 2255 [154], a motion for appointment of counsel [164], a motion for a new trial [183], a supplemented c 2255 [192], a motion for acquittal [201], a motion for reconsideration [205], the instant c 2255 [214], and a supplement seeking to add a *Johnson* challenge [245]. Moreover, she proceeded *pro se* with her motion to recall the mandate in the Fifth Circuit.

9

*States v. Johnson*, 308 F. App'x 768, 769 (5th Cir. 2009) (vacating direct appeal judgment upon determination that counsel did not advise client in writing of right to seek certiorari review). However, these cases involve situations where counsel either failed to advise the client of the right to seek certiorari review or failed to fulfill a promise to do so. In this case, both Miller and her appellate counsel, McCoy, testified that McCoy advised Miller in writing that a certiorari petition would not be filed on her behalf, and that she had ninety days within which to file her own, if she chose to do so.

Moreover, relief in a § 2255 motion is reserved, as is relevant here, for claims "that the sentence was imposed in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2255(a). While "indigent defendants pursuing appeals as of right have a constitutional right to a brief filed on their behalf by an attorney, that right does not extend to forums for discretionary review." *Austin v. United States*, 513 U.S. 5, 8 (1994) (internal citation omitted). The Constitution does not guarantee a criminal defendant the right to counsel to pursue a certiorari petition, nor is certiorari review by the Supreme Court a judicial proceeding to which a criminal defendant is entitled. *See* 28 U.S.C. § 1254 (writ of certiorari is discretionary); S. Ct. R. 10 (certiorari review is a matter of discretion). Because a petitioner is not entitled to counsel on collateral review, a claim of ineffective assistance of counsel in filing a petition for writ of certiorari fails to raise a constitutional claim. *See Ross v. Moffit*, 417 U.S. 600, 619 (1974) (holding that respondent was not denied a constitutional right when state refused to provide counsel to aid him in obtaining discretionary appellate review); *Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982) ("Since respondent had no constitutional right to counsel, he could not be deprived of the effective assistance of counsel by his retained counsel's failure to file the application [for certiorari] timely."); *Clark v. Johnson*, 227 F.3d 273, 283 n.5 (5th Cir. 2000)

("Because there is no right to counsel for discretionary appeals, we need not analyze this claim under *Strickland*."); *United States v. Lauga*, 762 F.2d 1288, 1291 (5th Cir. 1985) (holding that counsel's failure to seek a writ of certiorari from the Supreme Court could not give rise to § 2255 ineffective assistance of counsel claim). Accordingly, the Court finds that Miller was not denied a constitutional right with regard to counsel's failure to file a petition for certiorari on her behalf.

### *Johnson*-Based Challenge

Miller also has raised a claim that her convictions for two counts of aiding and abetting in brandishing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c) no longer qualify as violent felonies, because they are only crimes of violence under the statute's "residual clause," which is materially indistinguishable from the residual clause of the Armed Career Criminal Act held unconstitutionally vague in *Johnson v. United States*, 135 S. Ct. 2551 (2015). The *Johnson* decision was made retroactively applicable in *Welch v. United States*, 136 S. Ct. 1257 (2016).

The residual clause at issue in *Johnson* defined a violent felony to include offenses "otherwise involv[ing] conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). The Fifth Circuit has addressed the concerns prompting the *Johnson* holding:

> In *Johnson*, the Court highlighted two features of the Act's residual clause that together make the clause unconstitutionally vague. *Id.* at 2557. First, the Court observed that "the residual clause leaves grave uncertainty about how to estimate the risk posed by a crime" under the categorical approach required by *Taylor v. United States*, 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). *Id.* Second, the Court noted that the Act's "imprecise 'serious potential risk' standard" was difficult to apply. *Id.* at 2558.

*United States v. Gonzalez-Longoria*, No. 15-40041, 2016 WL 4169127, at *3 (5th Cir. Aug. 5,

2016) (footnote omitted).

As noted above, Miller was convicted of two counts of aiding and abetting the use of firearms in furtherance of armed bank robberies, a conviction which provides for imprisonment for brandishing a firearm in furtherance of a crime of violence. 18 U.S.C. § 924(c)(1)(A). The statute defines a crime of violence as a felony that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A)&(B). Miller claims that section (B) ─ the statute's residual clause ─ is vague and substantially similar to the clause invalidated in *Johnson*.

The Fifth Circuit recently rejected a vagueness challenge to the definition of "crime of violence" in 18 U.S.C. § 16(b), which is materially indistinguishable from the crime of violence definition in § 924(c). *See Gonzalez-Longoria,* 2016 WL 4169127, at n.1 and n.6.[3] First, finding the definition in § 16(b) "predictively more sound," the court noted that "[r]isk of physical force is more definite than risk of physical injury; further, by requiring that the risk of physical force arise "in the course of committing" the offense, 18 U.S.C. § 16(b) does not allow courts to consider conduct or events occurring after the crime is complete." *Id*. at *3. Second, the court determined that the *Johnson* Court noted 18 U.S.C. § 16(b), like most federal laws, did not tie phrases such as "substantial risk to a confusing list of examples," but rather, it required judges to merely interpret the phrase as a matter of routine, just as with "dozens of federal and state criminal laws." *Id.* at 4 (citing *Johnson*, 135 S. Ct. at 2561). The Court finds that the "residual clause" in § 924(c) does not

---

[3] 18 U.S.C. c 16 defines "crime of violence" as follows: (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. 18 U.S.C. ' 16.

share the same infirmities as the ACCA's residual clause.

Additionally, the Court notes that the Fifth Circuit has denied permission to file successive, *Johnson*-based petitions based on convictions under 18 U.S.C. 924(c)(3)(B). *See, e.g.*, *In re Fields*, No. 16-50521, 2016 WL 3383460, at *1 (5th Cir. June 17, 2016) (noting that disagreement among the courts on whether to grant permission to file a successive § 2255 petition based on the argument that *Johnson* applies to section 924(c)(3)(B) "demonstrates that the Supreme Court has not taken a position on whether *Johnson* applies to section 924(c)(3)(B)"). Accordingly, the Court rejects the argument that *Johnson* invalidated § 924(c)(3)(B).

Miller otherwise argues that her convictions do not satisfy the "force" clause ─ Section (A) ─ of the statute, as the bank robbery statute allows a conviction of bank robbery by intimidation, therefore allowing a conviction without meeting the "by force" requirement of § 924(c)(3)(A). The federal criminal statute governing bank robbery provides:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to ... any bank ... Shall be fined under this title or imprisoned. . .

18 U.S.C.A. ' 2113(a). "Intimidation" as used in the statute requires the threatened use of physical force, which is sufficient to satisfy Section (A). *See, e.g.*, *United States v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016).

Miller also argues that since she was acquitted of the predicate violent crime, i.e. bank robbery, it is apparent that the jury did not find that she aided and abetted the taking of property by force and violence, or by intimidation. The Court iterates that a jury found Miller guilty of aiding and abetting the brandishing of firearms during and in relation to a crime of violence. The federal

aiding and abetting statute "reflects a centuries-old view of culpability: that a person may be responsible for a crime he has not personally carried out if he helps another to complete its commission." *Rosemond v. United States*, 134 S. Ct. 1240, 1245 (2014); *see also* 18 U.S.C. § 2. Bank robbery is a crime of violence because it has force, violence, and/or intimidation as a necessary element. *Royal v. Tombone*, 141 F.3d 596, 602 (5th Cir. 1998) (holding under § 924(c)(3)(A), an inmate convicted of the crime of bank robbery is incarcerated for a "crime of violence"). Other circuits have concluded, post-*Johnson*, that bank robbery is a crime of violence. *See, e.g., In re Sams*, ___ F.3d ___, 2016 WL 3997213, at **3-4 (11th Cir. July 26, 2016) ("We . . . hold now that a bank robbery conviction under § 2113(a) by force and violence or by intimidation qualifies as a crime of violence under the § 924(c)(3)(A) use-of-force clause."); *McNeal*, 818 F.3d at 153 (concluding bank robbery conviction is qualified as crime of violence under use of force clause because it requires taking "by force or violence," thus requiring use of physical force, or by "intimidation," which involves the threatened use of physical force, and "either of those alternatives includes an element that is 'the use, attempted use, or threatened use of physical force'"). Accordingly, the Court finds no merit to Miller's claim, and relief on this issue is denied.

**Certificate of Appealability**

This Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Miller must obtain a COA before she may appeal the denial of her § 2255 motion. 28 U.S.C. § 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*,

529 U.S. 473, 484 (2000); *see also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* to COA determination in § 2255 proceeding). To obtain a COA on a claim that has been rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Based on the *Slack* criteria, the Court finds that a COA should not issue in this cause.

## Conclusion

For the reasons set forth herein, the Court **ORDERS** that Miller's § 2255 motion [214] is **DENIED**. A COA is **DENIED**. A separate final judgment will enter today.

**SO ORDERED** on this the 3rd day of October 2016.

      /s/ Sharion Aycock
    **U.S. DISTRICT JUDGE**